IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

AMANDA THOMPSON, o/b/o )
J.K.B., a minor child, )
)
      Plaintiff, )
)
      v. )   Case No. CIV-24-193-GLJ
)
FRANK BISIGNANO,[1] )
Commissioner of the Social )
Security Administration, )
)
      Defendant. )

# ORDER

Claimant Amanda Thompson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits for her daughter J.K.B. under the Social Security Act. Claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining J.K.B. was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

    **I.**    **Social Security Law and Standard of Review**

Disability for persons under the age of eighteen according to the Social Security Act is defined as a medically determinable physical or mental impairment or combination of

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted for Michael O'Malley as the Defendant in this action.

impairments that causes marked and severe functional limitations and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 416.906. Social Security Regulations implement a three-step sequential process to evaluate a claim for Child's Supplemental Security Income Benefits under Title XVI of the Social Security Act.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[2] Step one requires claimant to establish the child is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 416.971-416.976. Step two requires claimant to establish the child has an impairment or combination of impairments that is severe. If the child is engaged in substantial gainful activity or is found not to have a medically determinable impairment or the impairment causes a slight abnormality or combination of slight abnormalities resulting in no more than minimal functional limitations, she is considered not disabled. At step three, the child's impairment must meet, medically equal, or functionally equal the severity of an impairment in the listing of impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A child suffering from a listed impairment or impairments that meets or medically equals the requirements of the listing or that functionally equals the listing and meets the duration requirement will be found disabled. See 20 C.F.R. § 416.924(a)-(d)(2).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## II.  Background and Procedural History

J.K.B. was ten years old at the time of the administrative hearing. (Tr. 34). Claimant alleges J.K.B. was disabled as of August 1, 2018, due to attention deficit hyperactivity disorder ("ADHD"). (Tr. 211). On June 21, 2022, Claimant filed an application for supplemental security income benefits under Title XVI (42 U.S.C. § 1381 *et seq*.). Her application was denied. ALJ Bill Jones conducted an administrative hearing and determined that J.K.B. was not disabled in a written opinion dated December 18, 2023. (Tr. 17-23). The Appeals Council denied review, so the ALJ's findings represent the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## III.  Decision of the Administrative Law Judge

The ALJ made his decision at step three of the sequential evaluation. He determined J.K.B. had the severe impairment of ADHD, but that such impairments did not meet and were neither medically nor functionally equivalent to any of the relevant listings. (Tr. 18-22). The ALJ thus concluded that J.K.B. was not disabled (Tr. 22).

## IV.  Review

Claimant contends that the ALJ failed to: (i) properly weigh J.K.B.'s subjective complaints, (ii) properly defer to J.K.B.'s medical and school records, (iii) properly evaluate several of the domain impairments, and (iv) provide a substantive "whole child" analysis. The Court agrees that the ALJ failed to properly evaluate both the evidence in the record and the subjective statements, and the case should be remanded to the ALJ.

A. <u>Evidence in the Record</u>

The relevant medical evidence reveals that J.K.B. was diagnosed with ADHD and prescribed medication for it, which required some dosage changes before the right prescription was reached because it reportedly wore off too fast as the day went on. (Tr. 245). Records reflect adjustments to J.K.B.'s prescription, and continued reports of being uncooperative at home even after she was considered controlled on medication. (Tr. 248). By August 2023, notes reflect that an increased dosage of her medication had been positive for her. (Tr. 279).

School records indicate that J.K.B. was not in special education classes and did not have an IEP. On August 15, 2022, J.K.B.'s teacher completed an evaluation in which she indicated that J.K.B. was one to two hours late for school 2-3 times per week, was several grade levels behind, but that J.K.B.'s functioning changed after she took her medication. (Tr. 164, 170). Although J.K.B. was in the fourth grade, her "actual" grade level was assessed at 1.9. (Tr. 164). Additionally, she completed a questionnaire with numerous check boxes under each of the six domains of functioning, in which she indicates J.K.B. mostly had no problem or only slight problems in the areas of moving about and manipulating objects; caring for herself, and health and physical well being; mostly slight problems with a few obvious or serious problems in interacting and relating with others; mostly slight problems with a few serious problems in acquiring and using information; and a combination of obvious, serious, and very serious problems in attending and completing tasks. (Tr. 165-170).

Teachers also competed the same form regarding J.K.B. on February 27, 2023, when she was going through fourth grade for the second time, and was performing at a 3.8 grade level for reading and 3.6 grade level for math. (Tr. 191-200). Notes reflect J.K.B. takes medication for ADHD, was "focusing and calm," and did not have an IEP nor a referral for disability testing. (Tr. 192). Notes reflect J.K.B. was nevertheless given repeated instruction, was read to, given a study partner, and given extra time, "constant" reminders, and one-on-one help. (Tr. 195-196). J.K.B. was noted to take ADHD medication, but that she could focus, was calm, and could hold a conversation. (Tr. 200). The questionnaire again included numerous check boxes under each of the six domains of functioning, in which they indicate J.K.B. had mostly no problems or only slight problems in interacting and relating with others, moving about and manipulating objects, caring for herself, and health and physical well-being; with more check boxes for obvious and serious problems in the categories of acquiring and using information and attending and completing tasks. At no point did they check that J.K.B. had "very serious" problems in any of the domains. (Tr. 195-200.) Spring 2023 Oklahoma School Testing Program results nevertheless showed J.K.B. was in the lowest quantile ("Below Basic") in both English Language Arts and Mathematics. (Tr. 234-237).

On September 13, 2022, a state agency physician reviewed the record and completed a Childhood Disability Evaluation as to the six domains of functioning (Tr. 42-46). She determined that J.K.B. had a *marked limitation* in attending and completing tasks; *less than marked limitations* in acquiring and using information, interacting and relating with others, and caring for herself; and *no limitation* in moving about and manipulating

-5-

objects and health and physical well-being (Tr. 43-44). A different reviewing physician agreed with this assessment upon reconsideration (Tr. 50-51).

At the administrative hearing, Claimant testified on behalf of J.K.B. that J.K.B. has ADHD and cannot go to school without medication. (Tr. 32). She stated that J.K.B.'s grades were better because she was repeating the fourth grade, and had tutoring two days per week. (Tr. 32-33). J.K.B.'s medication made her "not herself" when she was on it, and it negatively affected her appetite, but she struggled with basic tasks like washing dishes and cleaning her room when not on medication, as well as getting clothes ready for the next day and hygiene. (Tr. 33-34, 36-37). Additionally, J.K.B.'s mother testified that J.K.B. struggled to make and keep friends, and did not get along with her sister or mother. (Tr. 35-36). Furthermore, Claimant testified that she cannot take J.K.B. into the grocery store because she is too disruptive. (Tr. 36).

B. Analysis

At step three in a childhood disability case, the ALJ must determine whether the child's impairment or combination of impairments medically equals or functionally equals the listings. *See Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001). If a child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ must then determine whether the child's impairment functionally equals the listing, which means that the impairment (or combination of impairments) results in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. *See* 20 C.F.R. § 416.926a(a). These domains include: (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others,

(iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1)(i)-(vi). When the ALJ determines there is a marked limitation in one of the six domains, he has found the limitation seriously interferes with the "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). An extreme limitation interferes very seriously with a child's ability to do these things. *Id.* § 416.926a(e)(3)(i). Consideration of functional limitations includes information pertaining to functioning, such as reports of classroom performance, observations from others, or evidence of formal testing. *Id.* § 416.926a(e)(1)(i-ii).

In his written opinion, the ALJ determined that J.K.B.'s impairments did not meet, medically equal, or functionally equal a listing. In making these findings, the ALJ summarized the evidence, including the testimony of J.K.B.'s mother (Tr. 19-22). The ALJ briefly discussed each of the six domains of functioning and concluded J.K.B. had a *marked* limitation in attending and completing tasks; a *less than marked* limitation in acquiring and using information, interacting and relating with others, and the ability to care for herself; and *no limitation* in moving about and manipulating objects and health and physical well-being. (Tr. 19). As relevant to attending and completing tasks, the *marked* domain, the ALJ cited the 2022 Teacher Questionnaire showing J.K.B. in 2022 repeatedly late to class and completing work assignments, and still being in a deficit the following year despite improvement as well as extra time, constant reminders, and one-on-one help. (Tr. 21-22). As to the *less than marked* domains, the ALJ noted J.K.B.'s improvements in reading and math skills and no longer needing behavior modification strategies with regard to interacting and relating with others. As to the *no limitation* domains, the ALJ stated that

-7-

both the academic and health records did not substantiate limitations in these domains. (Tr. 22). The ALJ noted that the teacher evaluations were somewhat persuasive, but neither provided much basis or rationale other than grade levels. Additionally, he found the state reviewing physician opinions persuasive in providing a synopsis and basis, and consistent with treatment notes reflecting mild to moderate adaptive limitations that were managed with a medication regime. Claimant contends that the ALJ failed to properly evaluate Claimant's subjective statements and testimony, fully consider the school and medical records, properly evaluate the domain impairments, and provide a "whole child" assessment.

 1. *Subjective Statements*

"In determining whether a child is disabled, the agency will accept a parent's statement of a child's symptoms if the child is unable to adequately describe them." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014). *See also* 20 C.F.R. § 416.929. "'In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying.'" *Knight*, 756 F.3d at 1176 (quoting *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001)). Pursuant to the applicable agency guidance, the decision also must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *9 (Mar. 16, 2016).

The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (*citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

(vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2016 WL 1119029, at *7-8 (Mar. 16, 2016). Pursuant to the applicable agency guidance, the decision also must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*, 2016 WL 1119029, at *9.

Claimant contends that J.K.B.'s symptoms wax and wane, and that the variability meant she lacked a consistent attitude, focus, and appropriate behavior on a sustained and regular basis. She contends that repeating the fourth grade indicates a high level of impairment. The ALJ's analysis as to Claimant's subjective statements at the administrative hearing is entirely lacking. In his written opinion, the ALJ wholly ignored Claimant's testimony, making reference only to forms she completed but never her testimony. Rather than properly apply any of these factors, the ALJ simply recited the boilerplate language that the "allegations concerning the intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 21). The ALJ failed to link his subjective statement analysis to any evidence and provided no specific reasons for the determination. The Court therefore finds that the ALJ's boilerplate evaluation of the claimant's subjective statements fell below the abovementioned standards. *See, e.g., Sontag v. Astrue*, 2012 WL 3427416, at *7 (N.D. Okla. Aug. 15, 2012) ("Here, there was no more thorough analysis that followed the ALJ's use of boilerplate language, and the lack of that analysis requires reversal. While there may have been sufficient reasons with supporting evidence that could justify an adverse

credibility determination, the undersigned finds that the Court cannot make that determination without impermissibly substituting its judgment for that of the ALJ.") (*citing Hardman v. Barnhart*, 362 F.3d 676, 678-681 (10th Cir. 2004); *Peeper v. Astrue*, 418 Fed. Appx. 760, 766 (10th Cir. 2011)). Because the ALJ wholly failed to explain his boilerplate conclusion with affirmative links to the record, his analysis of the claimant's subjective statements was defective, and the case should therefore be reversed for a proper analysis.

   2. *School and Medical Records*

Claimant contends the ALJ failed to give proper deference to the school and medical records because J.K.B. repeated the fourth grade and improved test scores and performance were related to it being the second attempt. Additionally, she points out that J.K.B. still, even during her second attempt at fourth grade, performed below grade level in both reading and math. This argument is related to the argument below, as to the ALJ's assessment of the domain impairments.

   3. *Domain Impairments*

As noted above, the ALJ determined J.K.B. did not meet, medical equal, or functionally equal a listing, and therefore was not disabled. Claimant contends the ALJ improperly evaluated the cumulative evidence related the three *less than marked* domains, *i.e.*, acquiring and using information, interacting and relating with others, and caring for herself, along with the *marked* limitation of attending and completing tasks. Claimant again cites to improvement being skewed in light of J.K.B. repeating the fourth grade and her continued testing below basic even following behavior improvements. "The ALJ is charged with carefully considering all the relevant evidence and *linking* his findings to

specific evidence." *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (emphasis added) (*citing Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). The ALJ's entire analysis for all six domains of functioning is contained in one paragraph, and cites only to the teacher evaluations. (Tr. 21-22). The analysis is unclear if not erroneous, leaving the Court unable to derive how the ALJ reached his conclusions. "In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion . . . and whether he applied the correct legal standards to arrive at that conclusion. The record must demonstrate that the ALJ considered all of the evidence and the ALJ must discuss the evidence supporting his decision, the uncontroverted evidence he chooses not to rely on, and significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1009-1010. Thus, while the ALJ's overall decision does include a recitation of most of the evidence in the record (as pointed out by the Government), he did not link the evidence to his conclusions to the specific domains of functioning, particularly the three listed above. Such conclusory findings therefore require remand for the Commissioner to explain his decision.

4. *Whole Child Assessment*

As discussed above, the ALJ failed to perform the proper analysis. On remand, the ALJ will be required to assess all evidence and testimony, including a proper whole child assessment.

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of *all* the evidence in the record in accordance with the appropriate standards. If such analysis results in any adjustments to the step three

findings regarding any of the six domains of functioning, the ALJ should re-determine whether J.K.B. is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and the case REMANDED pursuant to sentence four of Section 205(g) of the Social Security Act for further proceedings not inconsistent herewith.

**DATED** this 12th day of August, 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**